Our fourth case for this morning is Schmidt v. Foster May it please the court, I'm going to focus on the first issue here today, the deprivation of counsel. Scott Schmidt was preparing for his homicide trial when he was taken into judges' chambers to explain the circumstances of the murder without his attorney participating so the judge could make a legal ruling on whether he would be able to present his heat of passion defense. The state court held that that hearing wasn't a critical stage, so there wasn't a Sixth Amendment problem, but its analysis was diametrically opposed to the big Supreme Court critical stage cases. And those are Hamilton, Memphis, Wade, Coleman, any of those cases, and all four of them, clearly established the legal standard that entitles Schmidt to relief. They all hold that a critical stage in a criminal case is a proceeding where there's at least a potentially contested issue and where defense counsel can help prevent prejudice or mitigate prejudice to his client. So this case is unusual, but it actually combines some of the problematic features of those Supreme Court cases. Like in Memphis and Coleman, this involved the taking of evidence. So a defense attorney there can generally question a witness, can object to questions. Now, are you sure that Mr. Schmidt's attorney, had he chosen to speak up, could not have objected to the court's removal of Mr. Schmidt? Well, the court specifically told him that he could not, that he was not able to participate. The court says something like, you are not a participant? Something like that. He discussed with the prosecutor the fact that in the procedure he would not allow the defense attorney to participate because his goal was to put the defense attorney in the same position as the prosecutor who was not in the room. So he said that back when they were in open court, and then he said that again in chambers that the attorney was not to participate. And then later, very late in the hearing, when it was nearly over and the judge said that Schmidt could have a chance to read the offer of proof while he was back making a phone call, he really reiterated and made it clear what his previous order had been when the lawyer said, you know, just for these few minutes, can I talk to him about the case? And the judge said, you should only be going over the offer of proof. But sure, if you're going over the offer of proof, you can talk to him for these brief minutes. When the hearing ended, at that point, did counsel try to supplement? I mean, I understand that the judge later characterized it as a final ruling, but that wasn't right away, right? Was there any effort to try to get him to reconsider or to submit additional proof? At the end of that hearing, exactly at the end of the hearing is when the judge ruled against the motion. And that was the end of that proceeding for the case. No, I understand that, but it was a preliminary motion, and so presumably there could have been some effort made to get him to reconsider, right? It wasn't until later on, counsel asked, was that final? And he said, yes, that was my final. That's right. And so that certainly makes it clear that he could not have supplemented. But did he try? There was a lab, right? No. So he said it right away, that this is final and I won't reconsider. I thought there were two things. I think I know what Judge Barrett is thinking about, because a few weeks later, doesn't Schmitt's lawyer want to put in an expert report and the trial judge says, I've already ruled on this issue? Right. So that's a few weeks later. But you're saying there's also something right at the end of the chambers? Just right at the end is when he reaches the ruling that says you cannot present evidence on adequate provocation. In fact, he doesn't just say that. He says there was no provocation here. And so that, I mean, frankly, even if there was, the lawyer could have tried to put an affidavit, could have tried to file a motion for reconsideration, could have tried to file an interlocutory appeal. As a practical matter, that hearing had ended. The judge had questioned Schmitt. It's not clear the timing. It's a pretty long transcript. So he had done a lengthy questioning of him. And like we said in the reply brief, there's really nothing you could do at that point to unring the bell of this lengthy, evidentiary hearing with the judge questioning the defendant on the underlying offense with the attorney not permitted to participate. Does Wisconsin follow more or less the federal rules of evidence? Yes, more or less. Right. Because, you know, Rule 103, and every state law that I know of, says once there's a definitive ruling, counsel doesn't have an obligation to continue to pop up and try to get the trial court to change its mind. That is correct, Your Honor. I mean... Can I ask, is there any Supreme Court precedent on this right to counsel that says if you're, if you have counsel for half of the evidentiary presentation on an issue, that's good enough? No, there's not, Your Honor. But he did not have counsel at any part of the evidentiary hearing, other than, again, this very limited role of you can help your client read a document that he's apparently never read because they went into chambers so quickly after this hearing. But again, I mean, the role of counsel for that, we can go back to Powell and Gideon and Ferguson and then really all of the critical stage cases that we talk about. What is the role of counsel? It's to protect the client's interests and to prevent prejudice, and the lawyer couldn't do anything at the hearing that would allow that. So did the lawyer agree to this procedure? There's some fuzziness in the record about that. There's certainly acquiescence, but no, there's no acquiescence. The court is the one who proposed the procedure. The attorney essentially said if you're going to have an ex parte discussion with my client, or sorry, if you're going to have a discussion with my client, I don't want the prosecutor involved and I want the record sealed. And then the judge asks the prosecutor, prosecutor, do you object to this as long as I won't let the defense lawyer do anything? He doesn't ask the defendant, do you object to this procedure? And the prosecutor says no, that's fine as long as the defense lawyer can't do anything, and that's when they go back and he reiterates for the record the defense lawyer won't be participating in the hearing. So getting back to the State Court of Appeals decision, the State Court of Appeals held that this wasn't a critical stage at all, and that's just because theoretically it was for Mr. Schmidt's benefit, and also because theoretically the judge had other evidence that he could look at in deciding the legal issue, whether Schmidt would be able to present his defense. But again, those Supreme Court cases that I'm talking about, none of them have any concern for the judge's subjective reason for a proceeding, and they also aren't about whether a forum is the exclusive forum for the case. Absolutely, and if you just think of the term critical stage not even looking at the cases in its colloquial sense, there was no hearing in the entire case that was more critical to Mr. Schmidt than the hearing where it was determined whether he would be able to present his defense. And a huge part of that, perhaps the biggest part, but we don't have to show it's the biggest part, but a big part of that was him testifying nakedly before the judge with no attorney questioning him, counseling him, assisting him, or even making arguments about how the judge should interpret the testimony he gave. Well the judge over and over keeps saying what was in your mind, what was in your mind, right? And it really seems like Mr. Schmidt didn't necessarily understand the question, and a lot of times it was worded as sort of, was this part of your state of mind? I mean again, it's important to remember that we were talking about an evidentiary ruling here. Did the defense meet its burden of production to present a defense at trial that the state would then have to disprove? Mr. Schmidt was talking about all kinds of stuff, because he's not a lawyer. He was a judge. Right, and you know throughout these proceedings people have said, well what should he have said, what should he have said? You know I can't pull something out of my pocket that if he had said it, it would have changed everything. But what he did was muddy the issue so terribly. I mean just the way that the Supreme Court talked about in Ferguson v. Georgia that an uncounseled defendant might do, sort of adrift in this situation that he doesn't understand. On the clearly established point, are there, the Supreme Court cases, I mean this is an odd situation, right, because you describe it as inquisitorial on the part of the judge. The Supreme Court cases are mostly in the more squarely adversarial context, no? So I'm not saying, I mean even if we're inclined to say this is a violation, I'm just thinking of the EDPA context. Right. And make that leap for me on the clearly established point. Sure, well in terms of the adversarial, again, the critical stage cases are consistent. This is, is there even a potentially contested issue that's being decided here? That's what it's talking about when it's talking about confrontational and adversarial. So is there a prosecutor questioning him at the hearing? No, but this was an adversarial proceeding as part of an adversarial case, even though it was the judge. So the judges and judges were opposed to the defendant? No, I certainly wouldn't argue that, but that this was a hotly contested issue that both parties were arguing as part of the adversarial process. And I understand under Wisconsin law this this factor, I'll call it, could relate to a more significant period of time than just, you know, the the archetypical, you know, walk into the room and discover somebody in bed with your spouse and shoot him, you know, on the moment. That Wisconsin actually has a longer time period in mind. Yes, that's true. And the trial court got that wrong in deciding the issue, which the State Court of Appeals recognized. But then looking at all of the evidence under, under a discretionary standard, it found that the trial court had reasonably exercised its discretion in finding that there wasn't sufficient evidence. But again, it was looking at the evidence presented at this bizarre hearing where there was no attorney. And so we have both judges talking about things like, well, the fact that who would leave a loaded gun in a garage with children. Now, that was a weird fact. I mean, I don't know how many of you in this room have gun-loving relatives, but I do, and they leave loaded guns around all the time. So. Ms. Flight, can I ask you about, go back to the Wisconsin Appellate Court's decision, paragraphs 47 and 48. I get under the AEDPA standard. Is it your view that at least part of that analysis presents a D2 problem where the court says that he could, that Schmidt could have presented additional evidence and that his attorney could have objected or presented concern? I'm sorry. There was, if the, if the counsel felt Schmidt or the court was overlooking something or had any other concerns, there was an opportunity to so advise Schmidt. Are those consistent with the record? I think there's a potential D2 problem. The problem with this is that frankly the Court of Appeals is ambiguous. Mm-hmm. And so it's not entirely clear what is the fact that they are relying on here, and I think there's a couple of ways to read it. So, but, but certainly I think it is possible that there's a D2 problem. I don't think you have to get to D2 because there's such a clear D1 problem that this was absolutely a critical stage. It was arguably the most critical stage of the case, but again, we don't have to show quite that much. But I'm getting into my rebuttal time. All right. Thank you very much. Ms. Burgundy. Good morning, Your Honors. May it please the Court. I'm Sarah Burgundy representing the Warden Brian Foster in this case. I wanted to make a few comments on counsel's opening statements. The, first of all, there, the court's comment at the end of the hearing that the defendant couldn't introduce evidence supporting adequate provocation. That was the decision. But it didn't foreclose the counsel from, in any manner, from objecting or doing anything, and it's certainly in the manner that... It sounds like a definitive ruling, you know, in the Rule 103 sentence, and lest there be any doubt about that, when counsel tries to introduce the expert report, he's not told just, this expert report has a problem. If you look at that context, in context, the judge is saying, I've ruled on this. Sure. Don't bother me anymore about it. That's right, Your Honor. And my point isn't that it wasn't a final ruling. The court ruled on the evidence after the hearing. So the most critical thing, is this murder one, or is this the the next layer down? This second-degree homicide is resolved on the basis of this, I've never seen anything like this before, this bizarre ex parte process in chambers where the defense attorney is told, you are not a participant. You may not speak. I mean, if the lawyer had spoken up and tried to object to something the judge was saying, could have been held in contempt. He was not told he may not speak. He was told you are not a participant. What does that mean to you? He was told that the counsel is present, but not participating. So, exactly. I understand why you want to get away from that conclusion, but it seems like revisionist history to me. I disagree, Your Honor. I think before the hearing, so as an initial matter, the decision wasn't made solely on the basis of this hearing.  It was based on briefing. It was based on argument at two hearings. So it's not a critical stage? Let's separate two questions. One is, was there a denial of counsel? Second, was there a critical stage? Neither. So, it wasn't a critical stage because what, you know, how do you get to there when it's a merits issue? It's the merits issue in this case. It's the merits issue in this case, but I can't think of a single case where an issue on the merits, whether it be an affirmative defense, whether it be an element of the crime, can be carved off and sent off into the judge's chambers with no, with, I'll just say, very limited participation by the lawyer. No jury involved, no briefing of the facts. He's got his witnesses lined up, you know, he's got lots of people, he's got lots of evidence, and the judge pulls it out of the adversary process. I don't see how this isn't even more critical than some things the Supreme Court has labeled as critical. Sure, Your Honor. So on the point that he has lots of evidence, these witnesses lined up, counsel was given an opportunity to present these witnesses in open court and didn't. No, not on this defense. Once the judge has said, I am not going to let you introduce any evidence on this defense. Correct, not, so afterward. No, not at the real trial, in other words. But at the February, before the February 10th hearing, counsel was told, I'll allow a number of witnesses on this defense. And that was at that hearing, counsel showed up and the only witness he presented was Mr. Schmidt. And at that hearing, he said, I would. He said that he proposed holding this hearing. When the court. So suppose somebody has a self-defense claim. You think it's fine to take that away from the jury, to have the court, before the trial ever starts, with no lawyer able actively to help the defendant, to decide whether you're going to let self-defense in? There are situations, so the purpose of this hearing was to protect Mr. Schmidt's Fifth Amendment rights. No, no, no. This ran rampant over Mr. Schmidt's rights. It was not in any way, shape, or form, something that protected his rights. Maybe it's something the state's going to get away with, but it's not something that protects his rights. I'm still struggling with the nature of this hearing. So is it the case, I mean, it sounded to me like the judge was afraid that some of the evidence he would introduce on this, on this issue, on this defense, would confuse the jury. It's like a 403 issue. So it seems to me like this hearing was kind of like a motion and lemonade, sort of, because he was trying to figure out if he could carry his burden of production for this defense, because that was weighing into his calculus of whether some of the evidence that Schmidt wanted to introduce would be excluded as confusing or prejudicial to the other side. That's correct. He was proposing introducing, I believe it was 29 witnesses, you know, whole manner of evidence before trial, and all kind of aimed at the character of the victim, acts the victim had committed. Sure, and judges deal with that all the time without this procedure. They say it's too many witnesses. They say, I'm going to restrict you from going into the victim's character. They say all kinds of things. They don't have half the trial outside of the courtroom. Even with, the court does have discretion. I mean, there were sort of two fights going on before the trials, whether the court could even make this evidentiary decision before trial, because this was essentially the jury instruction decision that would, had all the evidence come in, this was the decision the court would have been making at the end of trial. So the court had discretion to make this decision before trial, given the amount of evidence and the amount of prejudice. The way the court makes the decision is critical. If the judge looks at the list of witnesses and, you know, sees what the lawyer indicates, I expect witness A to testify, you know, that she was abusive to other husbands. I expect witness B to testify to a former event. The judge can go through that list, certainly, before trial. Judges do, as Judge Barrett says, in motions in limine all the time. What judges don't do is go back to chambers and hear uncounseled testimony from somebody at great length, and then rule on the merits, whether a defense is going to go forward or not. That's for the jury. But the court did want to make a relevancy determination to determine whether this defense was even going to be a viable defense. Sure. Could I ask you about the critical stage question in terms of Supreme Court precedent? The Wisconsin Appellate Court tells us, cites Bell against Cone, and then says, fatal to Schmidt's argument, the supplemental hearing was not the only opportunity for Schmidt to present his provocation evidence to the court. Can you point us to Supreme Court precedent that suggests a defendant does not have a right to counsel for the presentation of some evidence because he, that that's not a critical stage, because he has counsel and other opportunities to present more evidence? Anything in the Supreme Court's critical stage jurisprudence that endorses that analysis? Sure. In the list of cases that counsel raises to say that this is the clearly established law on critical stage, the kind of key touchstone is that it's a situation where a defendant irreparably forfeits a right. Irreparably? Yes. Where does that language come from? That, I believe, is in Wade, and in, and I actually don't have all the sites in front of me. Okay. But in reviewing the list of cases, that was the takeaway, basically, that it's irreparable forfeiture of a right that counsel's presence can prevent. Now, you know, one of the key words here is counsel's presence. There's no clearly established law holding that. When counsel is silenced, and that's what we've got here, there's not counsel, okay? But that's, I understand that's a separate question. Let me try this a different way. Page 28 of the blue brief, appellant says, it's not surprising that neither the Supreme Court nor any Federal Circuit Court has ever ruled that an adversarial proceeding occurring between arraignment and appeal, which settled a substantive dispute, was not a critical stage. Is that correct? Can you point us to anything else? Is it correct that there's no Supreme Court? Yes. Yes, and that goes to argument that there's no clearly established federal law. We're under the AEDPA here, so. No. The appellant is saying the Supreme Court has never found a proceeding between arraignment and appeal that was not a critical stage when it dealt with a substantive issue like this one did. I, I'm not aware. No, they've been unanimous. In other words, it's not the fuzzy area that AEDPA is designed to address. I don't believe that there's a case, well, I am not aware of a case where it's between arraignment and appeal. Okay, thanks. And let me, to approach that one more way, I think in your brief, you may have cited the panel opinion in Dassey and the Supreme Court's opinion in Yarborough, where you've got multiple factors that affect the particular constitutional question. And can you point us to other precedents that suggest anything remotely like this is not a critical stage? Can I point you to precedents that? I mean, look, on the, on the voluntariness of the confession issue, on the voluntariness of the interrogation issue in Yarborough, you know, totality of the circumstances, tests, cases on both sides. I don't see anything on your side of the scales here. Well, I think what we have on our sides of the scale is that there's no clearly established precedent holding that this type of hearing requires counsel to do the questioning, especially when the prosecutor's not present. And that's the problem that I think we're running into, that counsel runs into under the ADFA standard of review and under Ms. Ledeen and the cases. Under that approach, the more creative and outlandish the variation on due process of law is, then the more insulated it is from constitutional review. And I would note that Williams against Taylor in the Supreme Court makes it very clear that just because a problem hasn't come up, doesn't necessarily mean that a state court decision can't be contrary to clearly established law as announced by the U.S. Supreme Court. And that's true. So, and there are some things such as perhaps not resolving substantive issues in the case through a procedure in which the defense lawyer can't speak, the prosecution isn't there for that matter, the judge is just off on a long discussion with the defendant. It seems. Did defense counsel add any value here? Defense counsel was present at the hearing, so he was obviously there to observe it. He heard Schmidt's answers. He heard the evidence that went to the court. He consulted with Schmidt during a break in the hearing. But in a limited way. The court said, only look at this offer of proof. Which is what the focus of the hearing was. So, yes, but he consulted with Schmidt. And that was just a very short time while the court took a phone call? Correct. I guess I disagree with counsel's argument and your Honor's view that really counsel's hands were tied and he was literally bound and gagged at this hearing. Nobody's saying he was literally bound and gagged. Well, that's the wrong word. That's been decided in this room. Right. Long ago. Figuratively bound and gagged in the hearing. And that was a point that the post-conviction court made in its decision. It said before the hearing, we talked about how this would go. You didn't have any complaints. During the hearing, you didn't raise anything. After the hearing, you didn't raise anything. Other than this later expert report. But there were opportunities. I mean, counsel had any opportunity to raise a motion for reconsideration. To say, hey, your Honor. But you don't have to keep pestering the court. It's not necessary to file a motion for reconsideration once the court has made a definitive ruling. It's true, your Honor. It's preserved. But to kind of then go through the entire hearing, the entire trial, and then in the end say, you know what. He tries with the expert report, but the judge clarifies. The judge says, we are done with this issue. Well, and the expert report was a matter that they had talked about before the hearing began. Well, that's where I say, if you look at the context, I know you pulled the one line out. But if you look at the few paragraphs before and after, I think it's very clear. The judge is saying, we are finished with this issue. Do not raise this to me again. I disagree with that characterization, your Honor. I believe he was focused on that issue. And again, like the post-conviction court said in its decision, there was opportunities after the hearing for him. At any point, he could have raised different evidence, new evidence. This wasn't new evidence he was raising. This was an expert report basically saying the same thing. What was the basis for the prosecutor's request that the judge require defendants counsel not to participate? It wasn't stated. I think when the parties were discussing McLaren and both defense counsel and the prosecutor agreed that McLaren allowed the court to be making this sort of ruling before trial and that McLaren recommended this type of in-camera hearing. But McLaren doesn't say that. What McLaren says is you can have an offer of proof, which is not this type of proceeding at all. Certainly not necessarily. And I would just say that on the earlier point, the attorney says, Well, I thought the court left the issue open yet and was going to allow me to supplement the record concerning my offer of proof. The court, no. I basically ruled on it. I have ruled on it. And you can supplement the record for appeal purposes by making offers of proof. I'm satisfied that the court's ruling will stand, period. I mean, you've got to understand the lawyer's position.  That's right, Your Honor. The lawyer was really concerned about this we-can't-unring-the-bell problem because Schmidt went on and on and on and shot himself in the foot. Could the lawyer have sought reconsideration of the ruling by pointing that out? Like, well, I may not have protested this beforehand. I might have been complicit or agreed to this proceeding ahead of time. But now that this just didn't go, I expected to be able to participate. And I was an observer. And the benefit of my observer status is going to be that after the hearing, I'm going to move to ask you to reconsider because what unfolded was unconstitutional or at least unfair. Absolutely. And there is nothing stopping counsel from doing that. And may I add one more point? Of course. My time is up. You know, to kind of come in and say, the defendant needs to meet a burden of production to create some evidence and then say he provided too much evidence, I think is a little disingenuous and kind of hindsight-based. None of the courts looking at what happened at the hearing had difficulty figuring out what Schmidt was saying or how that fit within the subjective prong of adequate provocation. In fact, parties agreed that he had met the subjective prong. The question here was whether the objective prong was met. And to kind of come back and say, well, no, there was too much evidence, I think is arguing both sides of the point. All right. Well, thank you very much, Ms. Grady. Thank you, Your Honors. Anything further, Ms. Feighton? Just a few things. Thank you, Your Honor. First, to go to your point, Judge Barrett, in terms of could the lawyer have asked for reconsideration based on observations? I mean, I suppose theoretically, but I mean, this goes to your point, Judge Wood. But in addition, this guy was still going to trial and he was still appearing before this judge at sentencing. So there's only so much you want to do to emphasize things that your client said that are adverse to his interests. And there's only so many things you want to do to make a judge angry. I want to touch quickly. She mentioned that one of the cases referred to irreparable harm. That is accurate. That's a true quote. But it's important to, I mean, if you look at these Supreme Court cases, most of these, there is nothing that is literally irreparable. Nobody is bound and gagged in these cases. Hamilton, the Seminole case, is particularly interesting because the things that the client was not able to, or the things that went away at the end of the Alabama arraignment were his ability to raise an insanity defense, his ability to raise pleas and abatement. But then it specifically said the judge had the discretion to allow an insanity defense later and he never asked for it. But still, he was denied counsel at the critical stage. And also pleas and abatement, I had to look that up, but it's apparently for mistakes that have been made that are explicitly fixable to start the procedure over. On Judge Hamilton's point on sort of, or I'm not sure who made this point now, but we don't allow more creative, outlandish constitutional violations under EDPA doesn't do anything for those. And even in this court's recent en banc decision in Dassey, it quotes Panetti for the notion that a general standard can apply to very unusual facts, and they can clearly apply to very unusual facts, and that's what we have here. I have one more point, but I'm out of time. Go ahead. And that's just that, again, we have to remember that this was a very, very low burden. We were talking about some evidence. We don't have to show prejudice here, but a lawyer could have made a big difference in this hearing. Thank you. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement.